UNITED STATES of America

v.

Helen R. KELLEY.

Civ. A. No. 60-147.

United States District Court
D. Massachusetts.

Feb. 24, 1961.

Elliot L. Richardson, U. S. Atty., Harold Lavien, Asst. U. S. Atty., Boston, Mass., for plaintiff.

Gerald F. O'Neill, Jr., Worcester, Mass., John A. Canavan, Jr., Boston, Mass., for defendant.

FRANCIS J. W. FORD, District Judge.

This is an action by the United States to recover an alleged erroneous overpayment of a family allowance to defendant as wife of a member of the armed forces. The alleged overpayment of $428 arose from the payment of an allowance to defendant for the period from November 1, 1943, to March 1, 1944, during which period government contends that defendant's husband, Walter L. Kelley, was not entitled to the allowance. The government has credited against this amount a payment of $100 due to defendant for August, 1944, and withheld and consequently seeks here to recover $328 with interest and costs. The United States has moved for summary judgment.

Walter L. Kelley during the years in question was an enlisted man in the Army of the United States. He made application under the Servicemen's Dependents Allowance Act of 1942, 56 Stat. 381, 37 U.S.C. § 201 et seq. (1940 Edition, Supp. II) for a family allowance. Original application was made on December 25, 1942, and a second application on

May 31, 1943, following the birth of a second child.

On October 1, 1943, Kelley was promoted to staff sergeant, which placed him in the third pay grade. Under the original Act, as in force at that date, enlisted men of the first three grades were not entitled to family allowances. Hence under the law as it then stood, the payment for October, 1943, was the last to which he was entitled. The Act was amended on October 26, 1943, effective November 1, 1943, 57 Stat. 577. Under the amended act enlisted men of the first three grades became eligible for family allowances and on February 15, 1944, Kelley applied by letter for a family allowance. Government concedes that by virtue of this application he became entitled to the allowance beginning March 1, 1944. During the period from October 1, 1943, through February 29, 1944, Kelley was paid a monetary allowance in lieu of quarters for dependents.

■ Section 107 of the original 1942 act contained the proviso:

"Provided, That in the case of any dependent of an enlisted man in active service on the date of enactment of this Act, if application is filed for a monthly family allowance within six months after such date of enactment or within such longer period as may be prescribed in special cases by the Secretary of the department concerned, the period for which such family allowance shall be paid shall begin with the date on which such dependent first becomes entitled thereto under section 101."

Section 7 of the October 26, 1943, act struck out all of the original § 107 before this proviso and inserted new provisions not material here. The language of the quoted proviso was retained unchanged. Defendant argues that since the application was made by Kelley on February 15, 1944, within six months after October 26, 1943, under this proviso the allowance to her became payable on November 1, 1943, the date on which Kelley as a staff sergeant first became entitled to have a family allowance paid to his dependents. In other words, she argues that the "date of enactment" is to be taken after the amendment of the act as referring to the date of amendment. Before the amendment, the words clearly referred to the date of the original act, June 23, 1942. Congress in amending the act specifically left this proviso unchanged. There is no basis for holding that it was somehow intended to make it mean something else. If Congress had wanted to extend to persons in the armed services at the time of the amendment the same privilege it gave to those in the service at the time of the original act, it could easily have done so. The fact that no change was made in this proviso when the rest of the section was extensively rewritten indicates that no such change of meaning was intended. Defendant argues that since at the time of the amendment the six-month period had expired for anyone in active service at the date of the original enactment, the proviso becomes meaningless unless taken henceforth to refer to the date of amendment. This overlooks the fact that the proviso also contains provision for a further extension of time beyond the six-month period in certain cases.

■ In any event, even if defendant were correct in her interpretation of the § 107 proviso, this would not dispose of the question. Section 108(b) added to the act by the October 26, 1943, amending act, 57 Stat. 579, 580, reads as follows:

"(b) Except as otherwise herein provided, monetary allowances in lieu of quarters for dependents as authorized by section 10 of the Pay Readjustment Act of 1942 shall not be payable for the period during which family allowances to dependents of enlisted men of the first, second, or third grades are authorized by this title. An enlisted man who, on the effective date of this Act, is receiving, or being entitled to a monetary allowance in lieu of quarters for dependents, has applied therefor, may, at his option, receive or continue to receive such monetary allow-

ance or elect not to receive such monetary allowance and to have his dependents become entitled to receive family allowance. \* \* \* No dependent of any enlisted man shall be entitled to family allowance for any period for which such monetary allowance is paid to the enlisted man. \* \* \* "

Since Kelley was receiving the monetary allowance in lieu of quarters on November 1, 1943, his dependents were not entitled to the family allowance until such time as he made the election required by this section, nor were they entitled to be paid an allowance for any period when the monetary allowance in lieu of quarters was paid to him.

■ Defendant further contends that there exists a factual controversy as to two issues which bars the granting of the motion for summary judgment. The first issue is defendant's contention that recovery by the United States in this case would be against equity and good conscience. She relies on the provision of § 112 of the Act that, "the Secretary \* \* \* may \* \* \* waive the recovery of any money erroneously paid under this title whenever he finds that such recovery would be against equity and good conscience," and on the provision of 50 U.S.C.A.Appendix § 2213 that; "the Comptroller General, upon recommendation of the heads of the departments concerned, or such subordinates as they may designate, and a showing that collection would be against equity and good conscience, may waive indebtedness growing out of erroneous payments of allowances under authority of the Servicemen's Dependents Allowance Act of 1942, as amended." These sections provide only for administrative relief in cases of hardship. They give this court no authority to deny recovery of money legally due to the United States and hence there is on this ground no issue to be decided by this court in this action.

■ The second issue is defendant's claim that the United States has waived

collection of this sum. This defense was not set up in defendant's answer and the issue was merely stated without supporting argument in defendant's brief. The only factual basis for any contention of waiver appears to be a letter attached as an exhibit to defendant's affidavit filed in opposition to the motion for summary judgment. The letter reads as follows:

"Army Ground Forces Liaison Office
Lovell General Hospital
Fort Devens, Massachusetts
"2 August 1945
"Mr. Walter L. Kelley
18 Grape Street
Woburn, Massachusetts
"Dear Sir,

"Since your records were at the Separation Center it was impossible for us to check them.

"Regarding the $300.00 overpayment shown on the enclosed statement from the Office of the Fiscal Director we do not believe that you can be made to pay back to the government all or any part of this overpayment. This is conditional depending on whether or not you have been discharged from the service.

"s/ Richard D. Kern
Richard D. Kern
Captain, CAC
AGF Liaison Officer"

The affidavit asserts this letter was signed by "a duly authorized agent of the U. S. Army." It does not say what he was authorized to do and states no fact which would form any basis for a finding the signer was authorized to waive claims due to the United States. Moreover, the letter clearly does not constitute any sort of waiver of the claim. It purports only to state an opinion, admittedly formed without having examined the pertinent records, that the United States might not be able to enforce its claim. Erroneous legal conclusions expressed by subordinate officers do not amount to a waiver on the part of the United States.

The motion of the United States for summary judgment is allowed.